Good afternoon. Would you call on this case, please, Madam Clerk? Good afternoon. Will the attorneys who are going to argue the case please approach the bench. Identify yourselves, the party you represent, and how much time you'd like to argue. Good afternoon, Your Honor. Dan Pivovarczak on behalf of the people of the State of Illinois. My last name is spelled P as in Paul, I-W-O-W-A-R-C-Z-Y-K. How much time? I think 12 minutes. And good afternoon. Alison Flom on behalf of Appellant Malvin Washington. I expect my opening argument to be around 10 minutes, and I would ask to reserve approximately 5 minutes for rebuttal. Sure. Now, the microphones are for recording purposes. If you want to be heard by the masses assembled behind you, you're going to have to keep your voices up. Okay? Understood. Ms. Flom. Thank you. Good afternoon, and may it please the Court. Here in Illinois, encouraging positive inmate behavior is so important to our legislature that we have created a sort of crazy quilt of sentencing credit provisions that turn virtually every criminal sentence into an algebra problem. As this Court well knows, it is not uncommon for a single inmate serving a single term to serve a portion at 50 percent, a portion at 75 percent, a portion at 85 percent. And a portion at 100 percent. And a portion at 100 percent sometimes. But we endure, and I would argue further, that we embrace this computational madness because encouraging positive inmate behavior is just that important for the individual inmate's rehabilitation, of course, but also for institutional security and ultimately for public safety. The question today is whether to read one of those sentencing credit provisions, specifically the one regarding programming credit, in a way that encourages or discourages that kind of behavior. And it's worth noting here that this programming credit is not easy to come by. Unlike good time credit, which inmates occur simply by avoiding serious disciplinary violations, programming credit requires an inmate, first of all, to be accepted into one of the handful of qualifying programs. Well, I think your briefing on the issue from your perspective was excellent, and the State's from their perspective. So rather than spending all the time on the good parts of why we want these things in effect, I think it would be helpful, all of us, if you could focus on, A, what credits you're looking for and how these should be applied. Now, if I can just sort of get you thinking, focused the way I'm focused. His mandatory, his class act time was 10 years that he serves at 85%, right? That's correct. And so that's 8 1⁄2 years that he would be eligible for parole, correct? That's correct. Then he got a 15-year sentence on the second-degree murder, at which he will serve 50%. That's correct. Which is 7 1⁄2 years. That's correct. So that's a total of 16 years. Yes. Right? We know he's going to get credit, day-for-day credit, he's going to get credit for the time he served in the Cook County Jail before he was sentenced. Yes. Right? So that's about five years, plus or minus. That's correct. Right? He's been in the Department of Corrections for 8 years. About 8 years and some months. It's slightly complicated, Your Honor, because this was a retrial matter. I understand. But he's been in jail for 13 years. That's correct. Five in Cook County. Yes. Awaiting his first and second trials. Yes. In 8 years after his first trial. That's correct. Right? So he's been in jail 13 years. Yes. So as I think we all understand the problem, he's earned credits both while at the Cook County Jail, under the statute. Right? He's earned good time credits. Just good time? Or the in-custody type? Both. Yes, as to both, I should say. Both. Yes. And he's also earned credits during the 8 years he's been in the Department of Corrections that you're trying to get applied to his second-degree murder conviction. Right? See, that's where the statute's, you know, in my term, a disaster. So we're trying to figure out, I think we're trying to figure out, he's been in 13 years. You want additional credits to be applied to Judge Walowski. Walowski didn't apply. Right? That's correct. So she did apply the in-custody type. Yes, she did. And I'm sorry, I don't mean to cut you off, Your Honor, but I think I understand the court's question. Okay, go ahead. What's complicated, and this is something of a Frankenstein monster of a statute, is that there are three kinds of credits that are contemplated. There is the credit for time served, credit in custody. Let's acknowledge the time that this person was held prior to trial. What Your Honor has referred to as the in-custody time. Then there are the good time credits, which inmates accrue by avoiding serious disciplinary violations, and that's where the 50 percent, 85 percent, 75 percent, 100 percent formulas come into place. Okay. And then in addition, for certain inmates who complete intensive full-time programming, this special subcategory, there is yet another category of credits, and that is what Malvin Washington has earned here, and we would argue that he has earned it in spades. In the State's position, is it because he has a Class Act sentence, he's not entitled to that third category of credits? Yes. Can I just ask real quick, just to put this in perspective. The Act has been amended, is that correct? That's correct. And the issue is because he either earned or didn't earn that time prior to January 1st of 2018, that that's why we're here. But since, with the new Act, this has been resolved, is that correct? That is correct. Okay. There is no question that if the programming at issue were to take place now or any time after January of 2018, that Malvin Washington would be entitled to that credit under the new version of the statute. And you argue also under the old version of the statute. Absolutely. The State disagrees with you, but you're arguing that Duke was simply decided wrong. That's correct. Okay. With respect to the old statute. Just so we're clear, Duke is a Fourth District decision, I believe. That's correct. And then there was also a Third District decision, which attempted to follow Duke, but didn't even do that correctly. I believe that Your Honor is referring to an unreported. The O'Connell case, I think it is. They attempted to follow Duke, but didn't do it correctly. And maybe I should start with Duke, although I do want to address expressly our argument under the old statute as well. Before you go to Duke, I would like to address Justice Pierce's question and kind of go over the record with us. Because I think we all want to hear that. Absolutely. So with respect to the old statute, actually the statute then and now, the sentencing credit statute does essentially two things. It establishes these different ways that an inmate can earn certain kinds of credits. And then it establishes certain formulas and certain limitations on these different kinds of credits. The default credit formula is the day-for-day formula that we're familiar with. That's the 50 percent awarded for good behavior for certain offenses, for the majority of offenses. For his second-degree murder. Exactly. Okay. Then the statute also contains 13 provisions that provide limitations on the different kinds of credits that can be earned. And all of these limitations are based on specific offenses. Twelve of these limitations have been read to apply only to the portion of the inmate's sentence attributable to the enumerated ineligible conviction. Today we're talking about the 13th one, which is a limitation on this very special programming credit. And the question is whether to read that limitation in the same way that we have always read the 12 other limitations in the statute, which is to say to apply only to the portion of the sentence covering the ineligible conviction. Or to apply it in a way that taints, as Duke and as the State would have it, the entire sentence for the purpose of credit. Just so we're clear, you're using that word, but there's absolutely nothing in the statute, there's nothing anywhere other than Duke that speaks of this term taint. That's absolutely correct, Your Honor. So please don't even use that term. I'll make a note of that. I should say that the State's position is to read the provision at issue as if it said, a Class X conviction taints your entire sentence for programming credit eligibility. Or as if the provision at issue said, read this limitation in a way that is totally different from the 12 other limitations in the statute. Or as if it said, any person who has ever been convicted of a Class X felony shall forevermore be unable to obtain these special programming credits. But it does not say any of those things. And that is why our primary argument is that the plain language interpreted as it should be holistically consistent with the rest of the statute and with what we know to be the purpose of this statute, which is encouraging inmate programming, that the language should be read to limit the awarding of programming credits as to the Class X portion of Mr. Washington's sentence, but not as to the Class II. Okay. And you were going along swimmingly. The defendant gets 20 years for secondary murder. Yes. Served at 50%. Yes. He's in the Department of Corrections and he enrolls in programs. If he accumulates five years of program credit, if that's even possible, I don't know, is he eligible for parole, assuming he behaves himself, is he eligible for parole at five years? Or does it still stay at 10 years because the court order for this legislature provides it's 10 years or 20 years served at 50%? What's your understanding? I absolutely understand the court's question and I struggled with it as well when I was first encountering this statute. And the answer is with respect to Class II offenses or in fact any offense that's eligible for that day-for-day credit, that programming credit can take you under that 50%. Okay. That's not the case with sentences that are to be served at 85%. Class X. Correct. Yeah. You can't get below that. Because the program credits in the statute, program credits can't be applied to the Class X sentence. Correct. Correct. Then the question becomes, in my mind, perhaps the other justices, who determines, here we have a consecutive sentence. I don't know if it matters whether one sentence is served first and the other consecutive to that, or the Class X is first and then the other is consecutive to that. And I don't know if that matters on the application of the credits, assuming that there is no, quote, taint and that you're eligible for your non-Class X offenses. So in this case, your client has to serve 85% of the aggravated battery conviction. Correct. Which is eight and a half years. Yes. Now he starts his sentence for the attempt murder, which is the seven and a half years. Now, you're saying that whatever credits he accumulated, let's limit it to the Department of Corrections credits. They should be applied to that today so that perhaps he's eligible for parole today. Is that your point? Yes. Yes. And I want to be clear that it is the case that these programming credits, sometimes referred to as enhanced credits, can take someone in that day-for-day 50% category below 50%. Okay. And they would have the effect of, now that Washington has been incarcerated for so long, they would have the effect of essentially resulting in his release and his placement on MSI. His eligibility for release. Well, because these are offenses, because it's not a question of parole so much as a mandatory supervised release being triggered when he reaches the end of his term. Right. But this dovetails in those credits are determined by and applied by the Department of Corrections, correct? They are applied by the Department of Corrections. They are determined by. Yes. Okay. Yes. So Judge Walowski really had nothing to do with or say about whether those credits are applied by the Department of Corrections, correct? That is correct, Your Honor. And what we asked of Judge Walowski was to make a factual finding that the programming that Melbourne, Washington had completed the 5,000 plus hours of GED tutoring and also four in addition, four courses. We asked her to make a factual finding as to those hours and to defer to the Department of Corrections as to applying that to the sentence. In those hours, there may be a question at 5,000 or whatever it is, but let's assume it's a substantial number of months or days. Yes. All done in the Department of Corrections. Why would Judge Walowski be the one to tell the Department of Corrections to do that where normally a defendant is sent to the Department of Corrections and they have all their programs and hopefully the defendant does a nice job and behaves him or herself and then it's the department that decides to apply the credits. I do understand the court's question. What's different here is that the programming at issue took place while Mr. Washington was in county custody. And our Frankenstein monster of a statute acknowledges that programming custody can be based on programming that was done while someone's in I.D.C. custody or while they're in county custody. And if it's done while they're in county custody, the sentencing judge is to make a finding about that. Okay. So you're not talking about the Department of Corrections programming credits, are you? Or are you only focused on the credits that you believe your client earned while he was in the Cook County Jail awaiting his two trials? It's the latter, Your Honor. I think it's both. Because you're saying that Judge Walowski should have made that finding when she sentenced him. Yes. She did not because she believed that she was found by Duke. Yes. And the other issue is that the Department of Corrections believes that Duke is the law and therefore they're not allowed to give these credits even as he continues to participate in these programs while he's in the Department of Corrections. And the reason why they believe that is because he was also convicted of that Class X felony. And they believe that a Class X felony, and I'll use that term that I ask you not to use, taints all his other convictions and that the credit cannot apply to any of his convictions. That's correct. And therefore, so you're really talking about both. You're talking about Judge Walowski's failure or I don't want to use the term failure because I don't think the judge made any mistakes in this case. Agreed. I think the judge was rightfully bound. Yes. Because we have one appellate court in Illinois and it doesn't matter where the decision comes from. It's not like with the federal system. The district court, the District of Illinois does not have to follow them. The Eighth Circuit does, but they do it on the Seventh Circuit. Well, unlike that, in Illinois, once there's a decision in any appellate district, the lower courts throughout the state are bound by that decision. Yes. Your argument here today is that Duke was wrongly decided and you're looking for a decision from the First District that correctly decides this matter. Is that correct? Absolutely, yes. Therefore, Judge Walowski should have applied those credits and also we can't order the Department of Corrections to give him those credits, but we can simply say to the Department of Corrections that based upon the law in Illinois, you are allowed to give those credits. Yes. Yes. I think that answers your question, Justice. In part. So the Department of Corrections in this case is not applying, he never was intended to apply whatever credits he had for program credits. The Department of Corrections, while he was in Menard or Joliet or wherever he was, whatever he did there, they weren't even going to consider because of the Class X conviction. With respect to programming credits, prior to January 2018, yes. Yes. Okay. Yes. You wanted Judge Walowski to tell them, no, apply it, forget Duke, right? That was essentially what you wanted. And also apply credits that he earned in the Cook County Jail. The credits that, yes, yes, the credits that were in front of Judge Walowski were the credits from the Cook County Jail. Those were the Department of Corrections? Yes, and also the GED program, yes. Great. But you just said that the credits before Judge Walowski, what about the credits at the IPOC? Were you trying to get those applied also? At the time that we filed this appeal, the January 2018 – Forget that. Mr. Washington wasn't eligible to earn programming credits. At the time that we filed this appeal, the programming credits at issue were the credits that took place at the jail. But if this Court agrees with our position that Duke was wrongly decided and that there is no such thing as a Class X taint, then any educational programming that Malcolm Washington did at the Department of Corrections, and he has done quite a bit, would also be eligible for this enhanced programming. But it would be a moot matter because his – He gave it up for this because of the Cook County Court. That's right. That's right. Now I get that. But I go back to my question, why would Judge Walowski be in a position of telling the IDOC to apply credits that they administered? It's a Cook County judge dealing with Cook County Jail, Cook County programs under the statute. Typically, you know, they get sentenced. They say they've been in custody for two years. He gets two years credit for the sentence. Everything that happens at the IDOC is beyond their control unless there's some other lawsuit. Your Honor, I understand the Court's question. What we asked Judge Walowski to do was make a factual finding that the programming that Malcolm Washington engaged in at the jail satisfied the terms of programming credit under the statute. But the reason that we had to ask her to do that, even though I understand the Court's position, it seems weird to ask the Circuit Court to make a factual finding based on county programming that would apply as to IDOC. The reason we did that was 730 ILCS 5-5-4.5-100, which requires at the time of sentencing, if someone has done programming in the county jail prior to sentencing, there has to be a factual finding made by the trial court. I get that. But why does that provision also bring in whatever credits he previously earned while he was serving a sentence that had been reversed? And why would the judge have jurisdiction or authority to bring those into the mix? We did not ask Judge Walowski to give Malcolm Washington credit for programming that he did during his time in the Department of Corrections before this Court overturned his original conviction. We asked her to make a factual finding. That was not clear to me. So all you're asking for is whatever programming credits he earned, theoretically, under the statute while he was in the Cook County jail. That's absolutely correct. In addition to his time served credits that he's entitled to. That's correct. In those, whatever amount of days those are, they may be in dispute, but those, in your judgment, should be applied to his sentence. That's correct. Class X felony doesn't preclude the application of those credits. That's correct. And the exact number is actually not in dispute, which is to say that in our reply we conceded that the state was correct in its math, and I was incorrect in mine. It's 452 days. If those 452 days are applied to this existing sentence, that will be enough to materially affect his outdate. Absolutely. Mr. Washington has been incarcerated for so long now, and the underlying events took place in 2004. That's correct. He would still be subject to three years of mandatory supervised release, of course. Just so it's clear, absolutely, we're talking about his Cook County program credits. That's correct. Absolutely. Took me long enough to get to this point, but I'm happy to. May I address, Justice Walker, your questions regarding Duke? Please. Because I needn't to make no bones about our position here. It is our position that the Duke case was wrongly decided, and relatedly it is our position that Judge Walowski did not make a judicial error. She was bound in the absence of any first district authority. So it's a question of legal error that we're asking this Court to look at de novo and not a question we've cast no aspersions on Judge Walowski's decision once Duke was brought to her attention. But it is our position that Duke was wrongly decided, and more specifically that the error in Duke is its reliance not on the sentencing credit statute, 730 ILCS 5-363, but rather on a different sentencing statute related to consecutive and concurrent terms, which is found at 730 ILCS 5-584. There is language in 584 talking about how the Department of Corrections aggregates multi-conviction sentences in order to determine a single out date. 584 also makes reference back to 363 when talking about the rates at which different portions of the sentence should be served. But the Duke Court looked only at that first part of 584 and erroneously, we would argue, concluded that 584 meant that the Department of Corrections treated multi-conviction sentences as a single sentence for all purposes. And for that reason, the Tate argument, if you will, resonated. But because that misunderstanding of 584 was what animated the Duke Court, the Duke Court's decision was erroneous, and we would ask this court to revisit that issue. Unless there are other questions, I'd like to reserve a few minutes for rebuttal. Me too. Thank you. All right, Daniel. You can just call me Dan. I may need more than 12 minutes, however, because I'm going to start out by agreeing with Justice Walker on one thing, but I do need to address a whole lot of things that I think are being misunderstood. Justice Walker, I entirely agree with you about the term Tate. That is a term that Duke uses. You will find it not at all in my brief because I don't agree that that's what's going on here. And I want to use mandatory supervised release as an example of what actually is going on here in Section 363A4, which is the section that opposing counsel wants applied. In mandatory supervised release, if you have consecutive sentences, like the defendant does in this case, he has a Class I second-degree murder, which would have a two-year mandatory supervised release, and he has a Class X aggravated battery with a firearm, which would have a three-year mandatory supervised release. Why doesn't he have to serve both consecutively just like the rest of the sentence? Why doesn't he have to serve two years followed by three years? The answer is because of Section 584, which says that the Illinois Department of Corrections treats consecutive sentences like a single aggregate sentence. That's the only reason why the defendant doesn't have to be on MSI for five years. He benefits from that. Okay. Okay. But that deals with when he's out. It deals with part of his sentence, Your Honor. Well, yeah, but the part when he's out of custody. That's right. He's asking for credits to get him out sooner so he can go on three years mandatory supervised release. Right. And the reason why he can't have that is the same reason that he only has three years MSR, which is because the higher offense, the more serious offense in an aggregated sentence controls. And in this case, the fact that he has that aggregated battery with a firearm controls whether or not he's eligible for enhanced good time credit. And I just want to be clear that the terms that I'm using are good time credit is intended to refer to day for day or 85 percent, and enhanced good time credit refers to what the defendant is seeking here, which would absolutely allow him to go below the 50 percent or the 85 percent. Isn't that true? Let's take a class X. Exclude a class X conviction. All right? Attempted murder, 20-year sentence, served at 50 percent. Am I correct that that defendant is allowed to get program credits to serve less than 50 percent of the time? That's correct, Your Honor. And that means that the defendant in this case who also has a class X aggravated. Forget the class X. Right, yeah. Okay. So that the program credits inured to that defendant's benefit, right? Yes. If he successfully obtains it. Correct. So your position is that no defendant who has a class X conviction gets any credit, any program credits whatsoever? My position is that on the statute as he was sentenced, that is correct, and it is not something where there has to be the term taint or any other term in the language of the statute. The language of the statute makes absolutely clear. It says, however, no inmate shall be eligible for additional sentence credit under this paragraph if convicted of a class X offense or aggravated battery with a firearm. That's important in part because there's a whole lot of other. If convicted of a class X offense 20 years ago, 30 years ago, 40 years ago, 50 years ago? So is it a forever taint? That's not how the Illinois Department of Corrections interprets it. And certainly it isn't something that. But when you read it as you just read it, that if you have a class X, you've been convicted of a class X felony, then you can never receive any kind of benefit of the enhanced. And that would not be an unreasonable outcome if the Illinois legislature. If the legislature uses all the class X felony, you couldn't apply to me, but Justice Peters may be. Well, I mean, that's a more reasonable interpretation of the statute than to instead of saying where it says no inmate shall be eligible, instead putting a no conviction shall be eligible. Right. But it seems as though the way it reads, it could have been 40 years ago. You were convicted of a class X, therefore you could never qualify for programming credit if you are subsequently later convicted on a class 2 felony. That's how that statute sounds. So that can't be the intent of the legislature. I'm glad you brought up the intent of the legislature because I think that's absolutely important. And I think that this description of the sentencing statute as a crazy quote that exists just to give additional sentencing credit to people isn't correct. The reason why it's so complicated, the reason why there's 100% cases, 85% cases, 50% cases, is because the legislature wants to punish some more serious offenses more severely. And that is exactly what's going on in this case, where an individual who is convicted of a class X offense and then receives a consecutive sentence with a class 1 second-degree murder case is treated more severely than someone who is coming to the Illinois Department of Corrections with just the second-degree murder. Is treated more severely and is told do not do anything while in prison that can inure to your benefit and society's benefit and help you once you get out. In other words, if you're a class X offender, you're on your own and you're going to do the 85%. You have no chance, but everybody else has a chance of reducing the 50%, 75%, whatever. Does that make any sense? In this case, it's true again. Class X drug dealers who sell drugs within 1,000 feet of the school, that defendant who gets 10 years has to do 8.5 years class X, has no incentive, no motivation, no anything to participate in any program in the IDOC. Under the statute as it existed at the time the defendant was sentenced, but not now. And the problem with that, Your Honor, is saying that the legislature changed it to fix that problem and also saying that problem doesn't exist and he should have gotten the credit doesn't fit together. So they changed the statute to fix the problem I'm talking about? You're talking about, I was using class X drug cases, which absolutely under the current restrictions, and these are still restrictions on enhanced good time credit. Under those, that isn't an enumerated offense. But enhanced good time credit, even under the amended statute, still is completely unavailable to someone serving a sentence for a first-degree murder. And even someone who has, what was that? Class X. First-degree murder. What about a class X offense other than first-degree murder? Is that eligible for these program credits? Limited. So in this case, aggregated battle with a firearm, there are some amounts of credit that can be earned against that sentence. Now. Now. Now. Right. Right. Now when you say that they fixed it, what you're talking about is, given the example that Justice Pierce gave you, that someone who is serving 10 years on a class X, they're going to do 8.5, but after January 1st, 2018, that person can also get programming credit, correct? Not below 75%. So they can get programming credit, correct? Yes. Okay. But under the old statute, that person could not have gotten any programming credit, according to the legislature, correct? Assuming that we're talking about programming credit that was earned before January 1st, 2018. Yes. Prior to January 1st, 2018, prior to the legislature changing the statute, they could not have gotten any programming credit. That's correct. This case is different. Mr. Washington is not asking for programming credit for that class X. What Mr. Washington is saying is that he's entitled to programming credit for his second-degree murder charge. That's not different, Your Honor. The reason it's not different is, I'm going to go back to the MSR, he doesn't have a sentence for aggravated battery with a firearm and a sentence for second-degree murder. He has one aggregate sentence, and the controlling conviction is the one that's most serious. That's clearly gave him two sentences. That's correct. But I want to, and the opposing counsel talked about Section 584, and that is the statute that both adjusts mandatory supervised release and aggregate sentences as applied to this specific credit regimen. But before you go to that, do you see why this case is different from the example that Justice Pierce gave to you? That person had a class X. Whether one person had one before the change, another had one after. And, yeah, the legislature changed that. In the case here, Mr. Washington, there was nothing to change because he's not asking for credit on his class X. He understands that that law changed, but that change doesn't apply to someone already serving a class X sentence. What he's arguing is that he's entitled to the programming credit on his second-degree murder charge. And that's how this case is different from what you're talking about when you explain that the legislature changed. But what it also shows is that the legislature changed. I mean, if you want to really get to the arguments here, that they changed it because they realized, as Justice Pierce has said several times, that it is important for someone to come out of prison and be able to be a productive member of society, hopefully get a GED, hopefully attend college, and hopefully teach other people how to read while they're in prison. I believe they get credit for all of that, correct? Those all sound like things that would fall under Section 363A4, if that's your question. Which is really the statute that is at issue. It is. I realize that the Duke Court brought in another statute, but that statute was not at issue. That Duke Court didn't bring anything. Section 363B says specifically that whenever a person is or has been committed under several convictions with separate sentences, the sentences shall be construed under Section 584 in granting and forfeiting of sentencing credit. That's right in the statute that the defendant is asking for. That's something that the defendant repeatedly ignores, but that is why 584 is relevant, because that is defining the parameters of Section 363. It's speaking to granting sentencing credit for that Class X or greater offense. They've got to serve 85 percent. They still have to serve 85 percent of that sentence on that Class X conviction. That's a misunderstanding of Section 584, because what it says, and I understand how you said that Judge Walowski imposed two sentences, a consecutive sentence for two different offenses. But 584 says that when that person with those two sentences arrives at the Illinois Department of Corrections, that is then changed into a single aggregate sentence. And the calculation on that provides us minimum and maximum aggregate sentence. And this is straight out of 584. That also wouldn't be relevant to the issue that counsel has actually asked us to address. This just appears clearly brought out. The real issue is whether or not Judge Walowski could have given credit for that enhancement, for that programming, for the program credit for what the defendant did while at the Cook County Jail. That's getting the GED, the DePaul College program. So that's still different from what you're referring to in terms of what the Department of Corrections will do. It just appears it's clearly made that distinction, which I'll admit that I missed previously. So it's a different question. I disagree to the extent that while it may be a different question, the answer is the same. Because 584 absolutely controls the sentencing judge when they're determining whether or not 363A4 enhanced credit is earned pretrial. And that's right there in the statute as well. The judge is the one who's supposed to actually make that calculation. It says it right in the statute. It says that the judge is the one who's supposed to make that calculation and put it in the sentencing order. So did Duke deal with a county jail sentencing credit? No, Your Honor. Or did it deal with the Department of Corrections sentencing? It dealt with the Department of Corrections sentencing. So Judge Walowski perhaps was not bound by Duke because Duke didn't apply to county credits. I can see that I'm losing ground here because when I stepped up to the podium, everyone had agreed that Judge Walowski didn't do anything wrong. Well, she followed Duke. She followed Duke. And it sounded like there had already been an agreement that that was the right thing to do. And it sounds like I'm losing ground. So what I want to do is close. Professor? No, Your Honor. I want to focus on Judge Walowski for one second because the true problem with rewriting this statute or however you want to look at it to give him these credits, the problem with that is that Judge Walowski relied appropriately on Duke. And based off that, she had a deliberate and thoughtful sentence, and she knew how long she wanted him to serve. And she factored in all of the things that he is now looking for credit for into her mitigation. She said it repeatedly, Your Honors. She said, I already gave him credit for all that program participation in mitigation. Opposing counsels presented all of that participation in mitigation. That was factored into the term of years that the defendant got. The defendant got a shorter sentence because of the fact that he did all of those things pretrial. How do you know that from the record? Because she says it. Your Honor. The judge specifically says. Let the record reflect that you're reading from the brief and not from the record. Your Honor, on page 4, this is a block quote in my brief. You read page 4, not from the record, but go ahead. On page 4 of my brief, which quotes page 2116 of the reported proceedings, the judge says what he's been doing in the jail, that was a major factor in his mitigation. That I took into consideration in considering my sentence. I'm not going to give those credit hours. That was right after discussing Duke. And the fact of the matter is that she told the defendant that she believed with good behavior, he would be released in two to two-and-a-half years. That was her intent when she picked the term of years that she did. That he'd be released in two to two-and-a-half years from the time that he was sentenced. He's still, based off of the Internet Department of Corrections website, he's still on track to be released when Judge Walowski sentenced him to be released. Giving him double credit for these enhanced credits, giving him double credit both as mitigation and also secondarily as enhanced good time credit. So if he were not convicted of the class X, wouldn't Judge Walowski have been required to give him that credit? It would be a completely different case, Your Honor, if he wasn't. It's a yes or no question, though. If he were not convicted of the class X, wouldn't she have been required to give him that credit? If he had only been convicted of the second-degree murder, then yes, his programming credit would have been available, but he shot a second person. Just a second. She would have been required to give him the credit. You agree. So the question is, Judge Walowski believed that she was prohibited from giving him the credit because she needed to follow Duke. Right. And she balanced it. But a couple things here is, first of all, whether or not there's one issue that Ms. Fromm raises is whether or not Duke was even decided correctly. Where the other issue that Ms. Pierce has raised is whether or not Duke even applies to the case that before us today. That's a whole other issue. So your position is that if Duke didn't apply, Judge Walowski would have given him the credit and increased his sentence so that he served two and a half more years. That's exactly what she said explicitly in the record in both her ruling and when this request for this additional credit was made to her. This was something that motions were filed on this post-trial. This was an issue that Duke got a lot of discussion at the trial court level. I want to end with remedies, Your Honor, because I do believe that you have every reason to affirm this sentence. If you are going to find error in Judge Walowski's determination on this statutory interpretation, the appropriate remedy is to send this case back to the trial court so that way the defense can present sufficient evidence of the fact that he completed programs eligible under Section 36334. I thought you probably agreed that the number of hours would be 452. No, what I agreed to was the fact that the defense had asked for 1,000 more days than they were entitled to. And what I said was – So what you agreed to was that they were entitled to – Even – no, I didn't agree that they were entitled to anything. The entitled brief says that they're not entitled to it. But even under – If they were entitled, it would be how many days? If they were entitled, what was your calculation? It was – If someone says hers was wrong and you're right. No. So what are you saying? What's the number of days? It was 452 days. 452 days. Right. Okay. And that's just – and that mistake there, overestimating by 935 days how much credit, is just a perfect example of the absolute mess that the calculations and the hours presented to the trial court are. And that's because it was never reached. What you're doing is a calculation of day for day. It's actually 1.5. Well, I agree. That sounds like the error. But the thing was is that the trial court never reached the issue of how many credit hours. We are all confident that in the remote possibility that this case doesn't go your way, that the state, being as reasonable as they are, and the defendant, can sit down and avoid a hearing and agree to an appropriate number of days. I have every confidence that that might happen in the event you don't prevail. And I do believe that would need to happen at the trial court level so that way the statute could be complied with. That's the work of it. If there are no further questions, Your Honor, for the reasons asserted in my brief as well as now, I ask that you affirm the defendant's convictions and sentence. Thank you. Briefly, Ms. Kwan. Just very briefly. First, I want to address this question of whether or not the record establishes the correct number of hours or the programming that was done. I would direct the court to the supplemental record, specifically C198 through 200, which is a declaration that was filed on August 1st of 2017 in the trial court, a declaration from the person who runs these programs at the jail and specifically lays out the programs that were completed, the fact that each of these programs were full-time and more than 60 days, and with respect to the GED programming specifies the hours. So with respect to that issue, yes, I made a mistake with regard to the math in my opening brief, and I concede that. But in terms of the underlying facts, the hours of programming that Malvin Washington completed, the record does contain that. Again, that's sub C at 198 to 200. I also want to address the State's suggestion that Judge Walowski sentenced Malvin Washington the way that she did, knowing that he wouldn't get programming credit. That's not what the record reflects. Sentencing in this case proceeded as it always does in the circuit court, which is to say aggravation and mitigation were presented. The judge issued her sentence. After that, we turned to the question of sentencing credits, how much in custody credit, based on the time that Malvin Washington had done before, and then also only at that point did we begin our conversation about the programming credits. It is not the case that Judge Walowski issued her original sentence with the Duke Class X Tate theory in mind. With respect to the question of what the intent of the legislature was in creating or in endlessly amending 363, both this court and the Second District and the Third District and the Fourth District have indicated that the intention behind that statute is to encourage positive inmate behavior. Finally, I want to take issue or add some background to the State's argument that the Class X conviction is controlling here. The facts of this case show us exactly how absurd and unjust applying that Class X Tate principle can be. There were two convictions in this case, the Class X aggravated battery and the second degree murder conviction. It is uncontested that the murder victim here was a bystander, shot by a stray bullet during a confrontation between 17-year-old Malvin Washington and the aggravated battery complainant. The self-defense that was presented in this case related to the actions of the aggravated battery complainant, and the evidence was that he was attacking Malvin Washington. He was choking him. He was throwing him over the hood of a car. The jury then issued a verdict of second degree murder, finding that Malvin Washington did in fact act with a genuine, if unreasonable, belief that he needed to defend himself against the aggravated battery complainant. However, in Illinois law, we don't have a second degree aggravated battery. So the charge that truly reflects what the jury found here, the only charge that incorporates that imperfect self-defense, is the second degree murder conviction. And so the idea that the Class X conviction should be controlling, and controlling in such a harsh way, demonstrates the problems with the position that the state would advance. For that reason, we ask that this court direct that Malvin Washington receive 552 additional days of programming credit. At the risk of, I think it's 452. 452, yes. At the risk of getting everybody in the room to hate me, I just have one question. Would you address 584's application? Yes. 584 is the statute that sets out a number of rules regarding consecutive sentencing. The vast majority of 584 lays out when consecutive sentencing is permissible, when it is required, when concurrent sentencing is the default. The end of 584 talks about how consecutive sentences are to be served when someone is in custody. And with respect to the rates that are applied, 584 says, look to 363 to determine the rate at which someone serves a multi-conviction sentence. Or I should say the rates. 584 does say that for the purposes of determining an outdate, multi-conviction sentences are aggregated so that there is a single outdate. But that aggregation for the purpose of a single outdate does not erase the distinctions, the other distinctions relating to a multi-conviction sentence. Does that answer Your Honor's question? Fine. Let me see. If there are no further questions. Thank you very much. Thank you. We all appreciate your efforts in this regard. It's always a treat dealing with the Code of Corrections and the sentencing provisions of our legislature's hard work in deciding how best to deal with convictions and sentencing. So thank you all for your efforts. We'll try to issue a decision in due course. Thank you very much. The Court stands in recess.